**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**NATHAN MOTT,**

          **Plaintiff,**

**v.**                                              **CIVIL ACTION NO.: 3:23-CV-156
                                                   (GROH)**

**GEO GROUP,
MR. NOTTS,
FBOP DIRECTOR,
WARDEN JOHN DOE,
ASSISTANT WARDEN JOHN DOE,
MR. BLANKS,
MR. KNOTTS,
DR. BIRD,
NURSE MCKENNY,
CAPTAIN HAIGELMEYER,
C/O MR. BROCK,
C/O MR. DIGGUES, and
C/O MR. DIGG,**

          **Defendants.**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On June 12, 2023, the *pro se* Plaintiff, who was previously a federal prisoner incarcerated at USP Hazelton, initiated this case by filing an action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), claiming his Constitutional rights were violated. ECF No. 1.[1] The Plaintiff paid the initial

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:23-CV-156, unless otherwise noted.

partial filing fee on July 20, 2023. ECF No. 9. On December 29, 2023, the Plaintiff filed an amended complaint which is now before the Court. ECF No. 44.

The matter is before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

The Plaintiff initiated this litigation on June 12, 2023, by filing a complaint, along with attachments. ECF Nos. 1, 1-1. An Order to Answer was issued on July 31, 2023. ECF No. 10. After obtaining an extension of time to file a response to the complaint, the Defendants timely filed a Motion to Dismiss for Failure to State a Claim on November 6, 2023. ECF Nos. 31, 32. Following the issuance of a Roseboro notice [ECF No. 33] dated November 7, 2023, the Plaintiff filed a motion to amend his civil complaint on November 21, 2023. ECF No. 38. The Respondent filed a response in opposition thereto on December 6, 2023, arguing that the Plaintiff failed to attach a copy of the proposed amended pleading as required by Local Rule of Civil Procedure 15.01. ECF No. 40. By order entered December 7, 2023, the Court granted in part the Plaintiff's motion to amend the complaint, directing that any amended complaint must be filed on the Court-approved form, not later than December 21, 2023. ECF No. 42. The Plaintiff then filed an amended complaint on December 29, 2023.[2] ECF No. 44.

The claims asserted in the amended complaint are combined with a lengthy

---

[2] The Plaintiff signed his Amended Complaint on December 21, 2023, the envelope was postmarked December 26, 2023, and the document was filed with the Clerk on December 29, 2023. ECF No. 44 at 32–33.

narrative of events from July 12, 2021, through July 15, 2021. The Plaintiff alleges that on July 12, 2021, he experienced a medical event including projectile vomiting and an inability to walk. ECF No. 44 at 7, 18. The Plaintiff was transported to the medical services by stretcher, where he was administered an IV drip by Nurse McKenny, and returned to his unit by stretcher. Id. at 8, 19. The Plaintiff claims he awoke in the night of July 12 through July 13, 2021, unable to stand, and urinated on himself and his property, then in an attempt to clean himself, fell and injured his right hip and arm. Id. at 8, 20. The distress button was used, and Officer Brock contacted Nurse McKenny because the Plaintiff still required assistance to walk. Id. at 8, 21. According to the Plaintiff, Nurse McKenny responded that the Plaintiff had to get himself to medical services to receive treatment. Id. Officer Brock permitted another inmate to help the Plaintiff get to medical services. Id. at 8, 21–22.

The Plaintiff contends that on the way to medical services on July 13, 2021, Captain Haigelmeyer followed the Plaintiff to medical services to confirm the Plaintiff's injuries. Id. at 8–9, 22. On July 13, 2021, the Plaintiff was diagnosed by Dr. Bird as having severe vertigo, given an injection, and assigned a walker for ambulation. Id. at 9, 22. Later that day, the Plaintiff alleges that while using his walker that he hit a "large hole" in the pavement, causing him to fall, hit his head, and injure his neck, back, and right shoulder. Id. at 10, 23. According to the Plaintiff, Officer Diggues saw his fall, and called for medical assistance. Id. The Plaintiff was taken to medical service by stretcher and sent back to his unit on July 13, 2021. Id.

On July 14, 2021, the Plaintiff contends that he was again stopped by Haigelmeyer, and ordered to go through a metal detector unaided. Id. at 24. When the Plaintiff refused,

Haigelmeyer took the Plaintiff to the Lieutenant's officer based on the Plaintiff's refusal to obey an order. Id. at 10, 24. The Plaintiff contends that Haigelmeyer refused to allow the Plaintiff to eat lunch as punishment. Id. at 10, 25.

On July 15, 2021, the Plaintiff alleges that he was still suffering from vertigo, and was again stopped by Haigelmeyer who ordered the Plaintiff to walk through the metal detector unaided. Id. at 10–11, 25. The Plaintiff was again unable to do so, and was again denied lunch as punishment. Id.

The Plaintiff alleges that Haigelmeyer charged him with a rule infraction for failure to follow an order, and placed him in the Special Housing Unit (SHU) for 11 days. Id. at 11, 26. Further, the Plaintiff asserts he was later found guilty of the offense of failure to obey Haigelmeyer's order by the Unit Discipline Committee. Id. at 11.

Construed liberally, the Plaintiff's allegations are that: (1) he was denied medical treatment by Nurse McKenny who was deliberately indifferent to the Plaintiff's serious medical needs [Id. at 8, 21]; (2) he was denied a necessary medical device by Captain Haigelmeyer, and retaliated against or "punished" when he refused to walk without it [Id. at 9, 11]; (3) unnamed "prison officials" were deliberately indifferent to the Plaintiff's medical needs [Id. at 9]; (4) the warden and assistant warden were deliberately indifferent to the Plaintiff's severe medical needs when the Plaintiff spoke directly to them during meal lines[3] [Id. at 11, 27, 28]; (5) medical staff failed to properly document the severity of the Plaintiff's illness or injuries, which resulted in the issuance of a walker, instead of necessary wheelchair [Id.]; (6) Defendant Blanks as medical administrator, was deliberately indifferent to both the Plaintiff's illness and his staff's response to Plaintiff's

---

[3] The Plaintiff contends that "the warden explained to the Plaintiff that  he would not address his concerns until the Plaintiff first spoke to lower level staff members." ECF No. 44 at 11.

illness [Id. at 27, 29]; (7) Defendant Knotts was deliberately indifferent to the Plaintiff's serious medical needs [Id. at 28, 29]; and (8) Haigelmeyer was deliberately indifferent to the Plaintiff's serious medical needs, retaliated against the Plaintiff, and subjected him to corporal punishment, dietary restrictions, and unwarranted disciplinary confinement [Id. at 29].

The Plaintiff contends that he exhausted his administrative remedies through BP-10 level, and asserts that he attached copies of those remedies to the amended complaint; however, no copies of the administrative remedy process are attached. ECF No. 44 at 17–18.

As a result of these actions, the Plaintiff contends that he, "suffered stress, anxiety, bruising, pain, fear and emotional agony," when he was unable to stand or walk, that he was "forced to be dependent on strangers for help," and that he continues to "suffer[ ] chronic pain in his neck and back from his fall with the walker." Id. at 9, 30.

In his request for relief, the Plaintiff asks the court to award him compensatory and punitive damages against each defendant in their official and individual capacities in the amount of seven million dollars ($7,000,000.00). Id. at 9, 11, 31–32.

On January 11, 2024, the Defendants filed a Motion to Dismiss the Amended Bivens Complaint, and a memo in support thereof. ECF Nos. 51, 51-1. The Defendants argued that the Plaintiff failed to state a claim because: (1) the Plaintiff's Amended complaint presents a new context not authorized under a Bivens complaint [ECF No. 51-1 at 5]; (2) there are no special factors that counsel hesitation about granting an extension of the Bivens remedy to Plaintiff's claims [Id. at 9]; and (3) the Plaintiff failed to plead a plausible claim against BOP medical personnel.

A Roseboro notice issued on January 16, 2024. ECF No. 54. On February 6, 2024, the Plaintiff filed a response to Defendants' motion to dismiss. ECF No. 61. In his response, the Plaintiff argues that: (1) Federal Bureau of Prisons employees neglected their duty to provide for the safety, security and health of the Plaintiff; (2) the Plaintiff was denied medical treatment from July 12, 2021, through July 15, 2021; (3) he was denied the right to health care services at the institution; (4) Nurse McKenny violated the Plaintiff's right to health care when he[4] assigned the Plaintiff a walker instead of a wheelchair after his initial onset of symptoms, and that Haigelmeyer punished the Plaintiff by refusing to allow the Plaintiff to use his walker; (5) the Defendants violated the Second, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and 18 U.S.C. §§ 1621, 242, 241, and BOP Program Statement 3420.11. Id. at 2–4. The Plaintiff does not address the legal arguments raised by Defendants, that a Bivens claim should not be recognized in the context of Plaintiff's alleged injuries. Critically, Plaintiff does not address the impact of Egbert on his claims.

The Plaintiff provided an address for The GEO Group[5] on January 26, 2024. ECF No. 57. Thereafter a summons was issued for The GEO Group, and was returned executed as served on February 5, 2024. ECF Nos. 58, 63. The GEO Group, by counsel, filed a Waiver of Reply on March 11, 2024, which asserted that the Defendant would "file a reply (answer/motion to dismiss) pursuant to 42 U.S.C. § 1997e(g)(2) in the event that the Court finds that the Plaintiff has a reasonable opportunity to prevail on the merits

---

[4] Nurse McKenny is variously identified by the Plaintiff by both male and female pronouns. ECF No. 61 at 3.

[5] In its March 11, 2024, filing, counsel noted that the Defendant is properly called "The GEO Group," and was incorrectly named as "GEO Group." ECF No. 67 at 1.

against The GEO Group." ECF No. 67.

## II.     LEGAL STANDARD

### A.     Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327. Frivolity dismissals should only be ordered when the legal theories are

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

"indisputably meritless." Id.

### B.  Failure to State a Claim

The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, 404 U.S. at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do...." <u>Bell Atlantic Corp. v.</u> <u>Twombly</u>, 550 U.S. at 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." <u>Id.</u> at 555, 570. In <u>Twombly</u>, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

###### C.   Civil Rights Actions Under <u>Bivens</u>.

In <u>Bivens</u>, <u>supra</u>, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In <u>FDIC v. Meyer</u>, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a <u>Bivens</u> claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." <u>Id.</u> See <u>Correctional Services Corp. v.</u> <u>Malesko</u>, 534 U.S. 61, 71 (2001).

Pursuant to <u>Bivens</u>, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." <u>Corr. Servs.</u> <u>Corp. v. Malesko</u>, 534 U.S. 61, 70 (2001). The Supreme Court further explained in <u>Malesko</u>:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only

remedy lies against the individual.

534 U.S. at 72. Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[7] [have] the additional pleading requirement that the 'complaint contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

In Bivens, the Supreme Court held that it had the authority, "under general principles of jurisdiction" to "create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." Egbert, 142 S.Ct. at 1802. After Bivens was decided, the Supreme Court twice, "fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, see Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)." Egbert, 142 S.Ct. at 1802.

However, the Supreme Court has cautioned that implied remedies have been found in limited circumstances[8], and the judiciary should not "assume[ ] common-law

---

[7] The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that Bivens actions regarding deprivation of civil rights have long been considered as the federal counterpart to state actions authorized by 42 U.S.C. § 1983. As discussed below, Egbert v. Boule, 142 S.Ct. 1793 (2022), explains the difference between the statutorily created remedy under § 1983, and the judicially created remedies established by Bivens and its progeny.

[8] The Supreme Court in Egbert, 142 S.Ct. at 1799 - 1800, noted that it has declined to imply a similar cause of action for alleged constitutional violations in the following instances: Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (race discrimination suit brought by enlisted naval

powers to create causes of action." Egbert v. Boule, 142 S.Ct. 1793, 1802 (2022) (quoting

Malesko, 534 U.S. at 75). In Egbert, the Supreme Court held that, "[a]t bottom, creating

a cause of action is a legislative endeavor. Courts engaged in that unenviable task must

evaluate a 'range of policy considerations . . . at least as broad as the range . . . a

legislature would consider.'" 142 S.Ct. at 1802, quoting Hernandez v. Mesa, 589 U.S. at

93, 140 S.Ct. at 741 (2020).

Further, the Egbert court explained that to recognize new Bivens remedies, a court

must make a two-step inquiry to determine if: (1) the case presents a new Bivens context

which is meaningfully different from the three cases in which the Supreme Court has

implied a damages action; and (2) if the claim does arise in such a new context, whether

there are special factors which indicate that Congress is better equipped than the judiciary

to weigh the costs and benefits of allowing a damages action. Significantly, the Supreme

---

men); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (aerospace engineer's First Amendment defamation and retaliation suit against director of federal space flight center); United States v. Stanley, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (military veteran who volunteered for chemical warfare testing program sued for being unknowingly being administered LSD which caused psychological and personality changes); Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (improper denial of Social Security benefits, allegedly as result of due process violations); FDIC v. Meyer, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (terminated employee's Fifth Amendment suit claiming deprivation of a property right without due process); Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (federal inmate with a heart condition who was assigned to a Community Correctional Center's fifth floor bedroom suffered a heart attack and fell, after defendant's employee required inmate to use the stairs instead of the elevator to reach his bedroom); Wilkie v. Robbins, 551 U.S. 537, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (commercial rancher's Racketeer Influences and Corrupt Organizations Act (RICO) and Bivens claims against Bureau of Land Management (BLM) for allegedly using extortion to force rancher to grant an easement to BLM was without merit); Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (survivors of immigration detainee sued after detainee persistently sought, but was denied medical treatment, and later died of metastatic cancer, based on immunity for U.S. Public Health Service employees); Minneci v. Pollard, 565 U.S. 118, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012) (federal inmate sued for denial of adequate medical care by employees at privately run federal prison, was without relief under Bivens because state tort law authorized adequate alternative damages actions); Ziglar v. Abbasi, 582 U. S. 120, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017) (alien detained after September 11 terrorist attack filed suit alleging harsh and punitive pre-trial conditions in violation of Fifth Amendment); Hernández v. Mesa, 589 U. S. 93, 140 S.Ct. 735, 206 L.Ed.2d 29 (2020) (parents of 15-year old Mexican child shot and killed by United States Border Patrol agent across US-Mexico border after child crossed into US territory and returned to Mexico, not entitled to relief under theory of Bivens liability for violations of Fourth or Fifth Amendments).

Court wrote that, [i]f there is even a single "reason to pause before applying *Bivens* in a new context," a court may not recognize a *Bivens* remedy." 142 S.Ct. at 1803, quoting Hernández, 589 U. S., at 102, 140 S.Ct., at 743. The Supreme Court further explained:

> Finally, our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure. If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action. Importantly, the relevant question is not whether a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief. **Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.**

142 S. Ct. at 1803–04 (emphasis added) (cleaned up).

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his

pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 - 1 (1972) (per curiam); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." <u>Id.</u> at 555, 570. In <u>Twombly</u>, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

 "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id.</u> at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  <u>Id.</u> at 678.

 "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses." <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.  <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952.

## IV. ANALYSIS

**A.   Failure to State a Claim Against The GEO Group, Mr. Notts, FBOP Director, Warden John Doe, Assistant Warden John Doe, Mr. Blanks, Mr. Knotts, Mr. Brock, Mr. Diggues and Mr. Digg**

Pleadings submitted by the Plaintiff do not allege that the GEO Group, Mr. Notts, FBOP Director, Warden John Doe, Assistant Warden John Doe, Mr. Blanks, Mr. Knotts, Mr. Brock, Mr. Diggues, or Mr. Digg ever provided Plaintiff with medical treatment. ECF Nos. 44. The amended complaint makes the following allegations against these defendants, that:

> (1)   The GEO Group is a "private contractor to the Federal Bureau of Prisons." [ECF No. 44 at 2];
>
> (2)   Mr. Notts[9] and/or Mr. Knotts was a nurse supervisor [Id. at 2–3], who was deliberately indifferent to the Plaintiff's medical circumstances [Id. at 11], aware of the "adverse disciplinary sanctions" imposed on the Plaintiff, but refused to respond to the Plaintiff [Id. at 28];
>
> (3)   Warden John Doe refused to address the Plaintiff's "concerns until he first spoke to lower level staff members" [Id. at 11, 27];
>
> (4)   Assistant Warden John Doe was informed by the

---

[9] It appears that "Mr. Notts" and "Mr. Knotts" are the same individual. When identifying the names of Defendants, the Plaintiff identifies "Mr. Notts" as a nurse at USP Hazelton in B.2. of the Court-approved form. ECF No. 44 at 2. In explaining whether this Defendant was acting under the authority or color of federal law, the Plaintiff wrote, "Mr. Knotts is responsible for the performance of all nurses and the well being of all inmates at USP Hazelton." <u>Id.</u> at 3.

Plaintiff about his medical condition, but was deliberately indifferent to the same [Id. at 11, 28];

(5)     Mr. Blanks is legally responsible for the medical care of inmates as USP Hazelton [Id. at 15] but "refused to respond" to the Plaintiff's requests for help [Id. at 27];

(6)     Mr. Brock is an employee of the Federal Bureau of Prisons at USP Hazleton [Id. at 17] who contacted Nurse McKenny on July 13, 2021, regarding the Plaintiff's medical condition, and permitted another inmate to escort the Plaintiff to medical service [Id. at 21]; and

(7)     Mr. Diggues or Mr. Digg are not identified as Defendants in the amended complaint,[10] but is mentioned as a correctional officer who "observed the Plaintiff take a hard fall and immediately called for medical assistance" [Id. at 23].

Nothing in the Amended Complaint indicates those Defendants were present when the alleged denial of medical care occurred. Plaintiff's only claim against these Defendants is that they were deliberately indifferent to his medical needs. However, the Plaintiff's complaint acknowledges that of those Defendants, only Notts/Knotts was a medical provider at Hazelton, but never personally provided medical care to the Plaintiff. Further, the Plaintiff's own claim is that Notts/Knotts was a nurse supervisor, but that Dr. Bird provide the Plaintiff was treatment, a diagnosis, and provided him with an assistive medical device.

Accordingly, it appears that the Plaintiff has failed to comply with the Federal Rules of Civil Procedure requirement that only a short and plain statement of the claim showing that the pleader is entitled to relief as related to these Defendants, as required by Twombly.

---

[10] In the initial complaint, the Plaintiff captioned the Court-approved form with the names "C/O Mr. Diggues," and "C/O Mr. Digg." ECF No. 1 at 1. Later in additional pages to that document, at Paragraph B.8., the Plaintiff lists the Defendant name, "Mr. Diggues," but describes "Mr. Brock" as an employee of the Bureau of Prisons. Id. at 6. The undersigned can only conclude that the reference to Mr. Brock in Paragraph B.8. was a scrivener's error.

For all of these reasons, the Plaintiff's claim against the GEO Group, Mr. Notts/Mr. Knotts, Warden John Doe, Assistant Warden John Doe, Mr. Blanks, Mr. Brock, and Mr. Diggues/Mr. Digg should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### B.    Failure to State a <u>Bivens</u> Claim Against Any Defendant

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim upon which relief can be granted as to any Defendant. Plaintiff seeks monetary damages for alleged violations of his Eighth Amendment rights, asserting he is entitled to relief based on the holding of <u>Bivens</u>. ECF No. 44. However, in <u>Egbert</u>, the Supreme Court explicitly instructed lower courts that <u>Bivens</u> remedies should be expanded in only limited circumstances.

After <u>Egbert</u>, the Fourth Circuit declined to extend a <u>Bivens</u> remedy to a plaintiff who alleged his Eighth Amendment rights were violated when "Federal prison officials exposed him to conditions that posed a constitutionally unacceptable risk to his health and safety and took deliberate actions that exposed him to a substantial risk of serious physical harm." <u>Tate v. Harmon</u>, 54 F.4th 839, 842 – 843 (4th Cir. 2022). In <u>Tate</u>, the Fourth Circuit defined the issues presented as, "(1) whether Tate's conditions-of-confinement claim falls within the context of *Bivens* and its progeny and, if not, (2) whether the district court erred in refusing to extend *Bivens* to provide a damages remedy for his claim." <u>Id.</u> Echoing the Supreme Court in <u>Egbert</u>, the Fourth Circuit in <u>Tate</u> recognized that, "in the 42 years following Carlson, which was decided in 1980, the Court has 'consistently rebuffed' every request—12 of them now—to find implied causes of action against federal officials for money damages under the Constitution. 54 F.4th at

16

843. "Against this now critical condition of *Bivens* jurisprudence and the caution that the Court has mandated when applying it, courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson."* Id. at 845. The Fourth Circuit concluded:

> In short, courts' authority now to create new causes of action for money damages under the Constitution is most limited, for "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Ziglar*, 137 S. Ct. at 1858. And even "uncertainty alone" in this regard "forecloses relief." *Egbert*, 142 S. Ct. at 1804.

54 F.4th at 845.

Plaintiff's amended complaint fails to allege that any individual defendant took specific actions which constitute civil rights violations as recognized by Bivens, Davis, or Carlson. Accordingly, this Court must conduct the two-part Egbert analysis to determine if the action should proceed, by determining:

> (1) if Plaintiff's case presents a new Bivens context, which is meaningfully different from the three cases in which the Court has implied a damages action; and
>
> (2) if Plaintiff's claim does arise in a new context, whether there are special factors present which indicate the Judiciary is less equipped than Congress to weigh the costs and benefits of allowing the damages action to proceed.

142 S.Ct. at 1803.

### 1.    The Plaintiff's Case Presents a New Bivens Context

As argued by the Defendants, the Plaintiff's claims—that he was denied medical care, provided an insufficient medical walker instead of a wheelchair, was injured as a

result of a fall while using the insufficient walker, that staff were both deliberately indifferent to his resulting serious medical needs, was denied use of his walker to walk through a metal detector, retaliated against as a result of his medical needs, and improperly placed in the SHU—all constitute new contexts that were not previously recognized by <u>Bivens</u>, <u>Davis</u>, or <u>Carlson</u>. A review shows that all three of those cases are distinguishable from Plaintiff's claims, consistent with the arguments made by Defendants in their memorandum in support of their motion to dismiss. ECF No. 51-1 at 5–6.

The Plaintiff asserts that his Eighth Amendment rights were violated by Defendants' actions. However, only one of the three judicially created causes of action is arguably comparable to Plaintiff's claims. <u>Bivens</u> recognized a cause of action under the Fourth Amendment, and thus is not comparable to Plaintiff's claims. <u>Davis</u> recognized a cause of action under the Fifth Amendment, and again, is not comparable to Plaintiff's claims. Only <u>Carlson</u> recognized a civil rights action under the Eighth Amendment based on failure to provide sufficient medical care. However, <u>Carlson</u> is distinguishable from Plaintiff's claims.

<u>Carlson</u> was brought by a mother on behalf of her deceased son's estate, "alleging that he suffered personal injuries from which he died because the petitioners, federal prison officials, violated his due process, equal protection, and Eighth Amendment rights." 446 U.S. at 14. Note 1 of <u>Carlson</u> more fully explains the claims raised:

> More specifically, respondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack

18

more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital. The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

446 U.S. at 16, n.1.

By contrast, Plaintiff here claims that he was denied medical care by Nurse McKenny. ECF No. 44 at 8, 21. However, according to the Plaintiff's complaint, he was treated by Nurse McKenny on July 12, and 13, 2021, for both an unexplained illness later diagnosed as vertigo. According to the Plaintiff, his medical condition prevented him from standing or walking, but he was treated by Nurse McKenny for the condition and for three falls, two before and one after he was given a walker. ECF No. 44 at 8, 9, 20, 23. Further, the Plaintiff asserts in his complaint that he was treated and diagnosed with vertigo by Dr. Bird on July 13, 2021. Id. at 9, 22. The Plaintiff further acknowledges that on that date he was assigned a medical device to assist him. However, the Plaintiff contends that he was injured as a result of being assigned a walker that hit a "large hole" in pavement. The Plaintiff does not explain why he used his walker to walk through the "large hole," or what attempts, if any, he made to avoid the hole, or to mitigate any injuries he might have incurred after he walked through the hole.[11] The Plaintiff concedes that he received medical treatment after each of his falls.

---

[11] The walker was part of the treatment prescribed by the treating physician for the ailment presented by the Plaintiff. That the Plaintiff subsequently fell while using the walker is of no consequence, particularly since his fall was a direct result of him improper use of the walker. There is nothing in the Plaintiff's complaint to support that the walker was inadequate to treat the Plaintiff's condition, or that the treating Defendants were deliberately indifferent in prescribing its use. It was incumbent on the Plaintiff to use the walker appropriately and avoid surfaces that would make it unstable.

It is clear that Plaintiff's complaint concerning his injuries relates to his falls, specifically his fall while walking through a large hole with his walker, the denial of the use of his walker, which he contends was a necessary but insufficient medical assistive device. However, those claims are in no way equivalent to the allegations in Carlson of: (1) a pre-existing chronic and life-threatening illness, asthma; (2) inadequate access to medical treatment and medical providers; (3) delay in treatment for more than eight hours after an acute onset of illness; (4) administration of contra-indicated medication which worsened the patient's condition; (5) the use of machinery known to be inoperable to attempt to treat the patient; and (6) failure to transport the patient for outside treatment for the acute onset of illness. The specificity of such injuries and actions of Defendants in Carlson differ dramatically from the situation presented by Plaintiff.

The Fourth Circuit has cautioned that:

> The Supreme Court has instructed not only that "new context" must be understood broadly but also that a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations. While not providing an exhaustive list of distinguishing factors, the Court has noted examples that would support finding a new context, such as (1) uncertainty alone as to whether allowing a *Bivens* claim would have systemwide consequences; (2) a new category of defendants; (3) a difference as small as the rank of the officers involved; (4) the statutory or other legal mandate under which the officer was operating; (5) a potential effect on foreign relations and national security; (6) Congress's repeatedly declining to authorize the award of damages in the relevant context; and (7) the risk that the burden and demand of litigation would prevent Executive Officials from devoting the time and effort required for the proper discharge of their duties.

54 F.4th at 846 (cleaned up).

The Plaintiff's alleged injuries occurred in a different context than the injuries incurred in <u>Carlson</u>. Further, Congress has never authorized a suit for damages under similar claims as those raised by the Plaintiff.

Thus, Plaintiff's claim arises in a new <u>Bivens</u> context. Accordingly, the Court must conduct the <u>Egbert</u> special factors analysis before allowing Plaintiff's suit to proceed.

### 2. There are special factors counselling hesitation and which indicate the Judiciary is less equipped than Congress to weigh the costs and benefits of allowing the damages action to proceed

As recognized by the Fourth Circuit in <u>Tate</u>, the Supreme Court has directed that the "special factors" inquiry "must center on "separation-of-powers principles." 54 F.4th at 844 (quoting <u>Ziglar</u>, 137 S. Ct. 1843, 1857 (2017)). The Fourth Court further explained the importance of the separation of powers principle:

> We thus consider the risk of interfering with the authority of other branches, and we ask whether "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," and "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."

54 F.4th at 844–45 (quoting <u>Ziglar</u>, 137 S.Ct.at 1857). Further, in <u>Tate</u> the Fourth Circuit recognized that, "[a]gainst this now critical condition of *Bivens* jurisprudence and the caution that the Court has mandated when applying it, courts are clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*." 54 F.4th at 845. The Supreme Court in <u>Ziglar</u> previously recognized that:

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-

> powers principles are or should be central to the analysis. The
> question is "who should decide" whether to provide for a
> damages remedy, Congress or the courts?

Ziglar v. Abbasi, 137 S. Ct. at 1857 (quoting Bush v. Lucas, 462 U.S. 367, 380, 103 S.Ct.

2404, 2413 (1983)).

In Tate, the Fourth Circuit recognized the directive of the Supreme Court in Egbert

that, "the absence of a remedy for a wrong is ordinarily for Congress to fix, not the courts."

54 F.4th at 847. In Egbert, the Supreme Court wrote:

> The *Bivens* inquiry does not invite federal courts to
> independently assess the costs and benefits of implying a
> cause of action. A court faces only one question: whether
> there is *any* rational reason (even one) to think that
> *Congress* is better suited to weigh the costs and benefits of
> allowing a damages action to proceed.

Egbert, 142 S. Ct. at 1805 (cleaned up). Following the directive of Egbert, the Fourth

Circuit in Tate concluded:

> [I]n this context, the political branches are indeed "better
> equipped to decide whether existing remedies should be
> augmented by the creation of a new judicial remedy." [142
> S.Ct.] at 1804 (cleaned up). This is especially so because we
> are ill-suited to "predict the systemwide consequences of
> recognizing a cause of action under *Bivens*," and even our
> "uncertainty" on that question "forecloses relief." *Id.* at 1803,
> 1804 (cleaned up).
>
> In short, the "special factors" counseling hesitation here in
> providing a new cause of action are similar in kind to the
> factors distinguishing Tate's claim from the claim
> in *Carlson.* Heeding the Supreme Court's warning that courts
> should not be in the business of creating causes of action and
> that they must give the legislative branch "utmost deference"
> in considering whether to do so, our uncertainty is itself
> sufficient to resolve Tate's claims.

54 F.4th at 848. In reviewing the Plaintiff's claims, the undersigned finds that the same

factors which counseled hesitation in Tate, are present here. This Court is ill-suited to

predict the systemwide consequences of recognizing a cause of action under <u>Bivens</u>. As the Supreme Court in <u>Egbert</u> noted, '[t]hat uncertainty alone is a special factor that forecloses [<u>Bivens</u>] relief." 596 U.S. at 493. While uncertain whether allowing the Plaintiff's <u>Bivens</u> claim to proceed would have systemwide consequences, the undersigned recognizes that where one prisoner's action is successful, other prisoners often raise similar claims in separate suits for damages. Thus, such uncertainty on the question of systemwide consequences as a result of recognizing a new <u>Bivens</u> action forecloses relief here, as it did in <u>Tate</u>. Accordingly, the Court finds that the Plaintiff has failed to state a claim upon which relief may be granted, and his claims should be dismissed with prejudice.

### C.     Failure to Respond to Defendants' Legal Arguments

Finally, in addition to the reasons cited above, although Plaintiff filed a response to the motion to dismiss, he failed to address any of the legal arguments raised by Defendants. Instead, Plaintiff addressed only factual issues, repeating many of the arguments made in his complaint, apparently relying upon the equities of his alleged claims to merit relief. However, as noted above, the Supreme Court in <u>Egbert</u>, and the Fourth Circuit in <u>Tate</u>, have held that extension of Bivens remedies in new contexts should be considered with extreme caution and deference to Congress. The Court declines to address the equities argued by Plaintiff because the law so clearly supports Defendants' motion to dismiss.

As noted above, because "only those questions which are squarely presented to a court may properly be addressed," this Court may not construct Plaintiff's arguments for him. <u>Weller</u>, 901 F.2d at 391. Even when liberally construing the Plaintiff's allegations,

he fails to assert any claims that the named defendants subjected, or caused him to be subjected, to the deprivation of any rights, privileges, or immunities which are secured by the Constitution and laws. Instead, the Plaintiff urges this Court to judicially expand civil rights remedies, in direct contravention of the holdings of superior courts. The Court declines to do so. Accordingly, for all of the above reasons, the Plaintiff has failed to state a claim for monetary relief, and his claims must be dismissed with prejudice.

### V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the amended complaint [ECF No. 44] be **DISMISSED WITH PREJUDICE**, based on the Plaintiff's failure to state a claim upon which relief can be granted. It is further **RECOMMENDED** that the Defendants' Motion [ECF No. 51] to Dismiss for Failure to State a Claim be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States

24

v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        May 16, 2024

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE